In the Matter of ARNOLD PRINTING CORP., General Assignor. ALEXANDER H. ROCKMORE, Respondent; DAVID STRAUSS & CO., INC., Appellant.

First Department, June 25, 1963.

*David Sive* of counsel (*Winer, Neuberger & Sive*, attorneys), for appellant.

*Cecil A. Citron* of counsel (*Sherman & Citron*, attorneys), for respondent.

*Per Curiam.* Involved is the question of the proper rate of commission for an auctioneer which rendered services to an assignee for the benefit of creditors.

The assignee-respondent retained auctioneer-appellant to sell the physical assets of the estate pursuant to court order (Debtor and Creditor Law, § 14). In remitting the proceeds of the sale, the auctioneer deducted 10% of the gross sales as its commission. On the assignee's final accounting, Special Term set the auctioneer's fee at 7% of gross sales, and ordered the difference restored to the estate. Thereafter the assignee moved for an order authorizing him to enter judgment against the auctioneer for the difference, which motion was granted, over the auctioneer's opposition, Special Term citing this court's opinion in *Matter of Vogue Pleating & Embroidery Co.* (11 A D 2d 358, 361). From that order, the auctioneer appeals.

No question is raised regarding the court's power to enter such an order (see *Matter of Creveling & Son Corp.*, 259 App. Div. 351, affd. 283 N. Y. 760).

Auctioneer-appellant contends that Special Term interpreted the *Vogue Pleating* case (*supra*) to require that no more than 7% of gross sales be paid the auctioneer acting for an assignee for the benefit of creditors, no matter what the circumstances. It does not clearly appear whether Special Term did so interpret that case but, in any event, it is well to refer to the question.

In the *Vogue Pleating* case, it was said (p. 361): "It is urged that in New York County as distinguished from other counties or judicial subdivisions of the State, the custom is to pay 10% of gross receipts as the auctioneer's fee. If that has been the custom it is time for the court to see to it that it is no longer followed. A fixed fee of 10% in every case without regard to the particular and individual circumstances we hold to be improper. We conclude that 7% of the proceeds of sale is a fair award to the auctioneer for his services in this case. In coming to that conclusion we have taken into consideration the fact that the sale was successful beyond the anticipation of the parties. Such success is reflected, however, in the auctioneer's fee being fixed on a percentage basis."

From the language quoted, it is evident that this court did not hold that 7% or any other rate of auctioneer's commission was to be mechanically applied, or even that any particular rate was to be a presumptive one. Instead, it was only stated that the court should scrutinize each case on its facts to determine the fair rate of commission. No doubt there will be cases in which an auctioneer will have justified a compensation of more than 7% of gross sales; conversely, 7%. should not be the minimum, either.

In this case the auctioneer submitted an affidavit containing a detailed statement of the services rendered. The affidavit is sufficiently detailed that, in the absence of a dispute as to its averments, there is no need for a hearing in this case. A detailed affidavit from the auctioneer should be required by the court before allowing any fee, as there should be no necessity for a hearing in the usual case, and with neither a hearing nor a detailed affidavit, there can be no basis for determining a proper fee.

The affidavit here has been reviewed. An officer of auctioneer-appellant, Hecht, states that two full days were spent by him examining the machinery to be sold, and, on one of the days, supervising the making of an inventory. For five days the auctioneer handled telephone inquiries and, on several occasions,

Hecht met interested persons to aid in their inspection of the machinery. The sale consumed a full day. For three days after the sale, Hecht supervised the dismantling and delivery of the equipment. Additionally, miscellaneous related services, such as clerical work, were performed. The matter was complicated by the existence of an outstanding chattel mortgage on much of the equipment. The affidavit concludes with Hecht's estimate that he spent "in excess of one full week personally in connection with this matter." The gross proceeds of the sale were $26,215.75. On the basis of a 7% commission, the auctioneer receives $1,835.10. It is concluded that the fee allowed by Special Term is ample.

Accordingly, the order directing refund to the estate of $786.47 and, if payment be withheld, authorizing entry of judgment therefor, should be affirmed, with costs to assignee-respondent.

BREITEL, J. P., RABIN, McNALLY, EAGER and STEUER, JJ., concur.

Order entered on December 13, 1962, unanimously affirmed, with $20 costs and disbursements to respondent.